UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRINA JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1872 CDP |
| ) | |
| ERIC K. SHINSEKI, ) | |
| U.S. Secretary of Veteran's Affairs, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Defendant Department of Veteran's Affairs (VA) moves to enforce a settlement agreement that plaintiff's attorney David Swimmer allegedly accepted on behalf of plaintiff Trina Johnson. Johnson claims that her attorney did not have authority to accept the settlement and asks that her case continue in this Court. Based on the evidence presented at the hearing on April 7, 2010, I find Swimmer did not have authority to agree to the settlement.

### **Background**

The key factual dispute is whether Johnson gave Swimmer the authority to settle her case on the morning of November 20, 2010 – the day that Swimmer accepted the VA's settlement offer. The parties do not dispute that Johnson had not given Swimmer the authority to settle the case before that day. The parties attended a mediation on October 28, 2009, but failed to reach an agreement. At

the mediation, Johnson sought money damages, in addition to several other terms. When the VA refused and instead offered to convert her termination into a resignation and to provide her with a neutral employment reference, Johnson refused to settle.[1] The testimony at the hearing indicated that Johnson's refusal was based on her personal dissatisfaction with the VA's settlement offer, rather than on Swimmer's advice, and that all of the parties understood this. Johnson and Swimmer did not discuss settlement again after the October mediation until the morning of November 20th. Therefore, after the mediation, neither Swimmer nor the VA could expect that Swimmer had authority to accept a settlement without Johnson's approval until Johnson delegated additional authority to Swimmer.

The phone call between Johnson and Swimmer on the morning of November 20, 2009 was apparently an attempt by Swimmer to obtain this greater authority. Swimmer called Johnson at approximately eight o'clock on the morning of November 20th to notify her that he would be discussing settlement with the VA later that day. During this conversation, Swimmer claims that he explained the terms of the settlement to Johnson in detail and that she agreed to the settlement, although he does not claim that he explained that his agreement would be final.

---

[1] Johnson testified that Swimmer left the mediation for a significant period of time and that she represented herself for "basically the whole thing."

Johnson claims that she did not agree to be bound by Swimmer's agreements during this conversation. She understood that Swimmer would only be negotiating with the VA, not reaching an irrevocable agreement. However, in order to resolve any ambiguity, she began calling Swimmer back within an hour of this conversation – before Swimmer spoke to the VA – to reassert that Swimmer should not accept a settlement without her approval. Swimmer does not recall speaking with her, but Johnson left him at least one voice message noting her concern and stating that Swimmer was only authorized to negotiate. When questioned directly on this point, Swimmer simply testified that he was very attentive to calls from Johnson, but otherwise refused to confirm or deny that he had received this message.

Nevertheless, Swimmer agreed to a settlement with the VA and sent a fax to the VA with an outline of the terms later that day. The fax stated that "I have my Client's authority to Settle this Case." The agreement stated that Johnson's termination will be converted to a resignation, that she will be given a neutral employment reference, that the VA will pay all costs of mediation, and that the VA will give Johnson information on how to access her accrued employment benefits. Swimmer did not attempt to consult Johnson before accepting this settlement or sending this letter to the VA.

The VA then prepared a detailed stipulation and settlement agreement and sent it back to Swimmer. The stipulation is substantially the same as Swimmer's outline of the settlement, however, the stipulation also included a provision prohibiting Johnson from re-applying to, or being employed by, the St. Louis VA medical center or any of its associated clinics. The parties cancelled all scheduled depositions and discovery.

Although Swimmer represented to the VA that he had authority to settle the case, his later interactions with Johnson indicate that he understood that Johnson had not given him the authority to settle the case without her approval. During a later conversation, Swimmer explained the employment reference provision in the agreement to Johnson and told her that he had sent her a document to review and sign.[2] Even at this point, Swimmer was still assuring Johnson that she had the option of accepting the settlement if she agreed with the terms. Swimmer similarly presented the settlement to Johnson a few weeks later, after she finally received the stipulation document, by saying: "I said that if she wanted – if she still wanted to settle the case, that I made an arrangement with her with finances between she and I."

---

[2] The date of this conversation is unclear, but the testimony at the hearing indicated that it was either November 21st or 27th.

Aside from Johnson's alleged delegation of authority on the morning of November 20th, Johnson consistently voiced her disapproval of the settlement. Johnson did not receive the stipulation until December 4th and called Swimmer's office the same day.[3] Johnson told Swimmer that she did not agree with the settlement and asked him to continue with her case in court. Swimmer refused and they agreed that he should not represent her any longer. On December 7th Johnson delivered a letter to Swimmer and to the Court stating that she did not consent to the settlement agreement.

## **Analysis**

The VA argues that Swimmer's acceptance of the settlement is binding on Johnson. "[W]here a party's attorney purports to have authority to settle and reaches an agreement, it is incumbent on the client to prove the attorney lacked authority, since counsel's act of settling is presumed to be authorized." *Owen v. Hankins*, 289 S.W.3d 299, 305 (Mo. Ct. App. 2009). Swimmer expressly represented that he had authority to settle the case in his fax to the VA, therefore, Johnson bears the burden of showing that she did not give Swimmer the authority to settle her case.

---

[3] Johnson was out of town when the stipulation arrived at her home and did not return until December 4th, 2009.

In determining whether a client gave her attorney authority to settle her case, the court may consider the client's communications with the attorney. *See e.g., Owen*, 289 S.W.3d at 305. In *Owen*, the court found that a client's silent dissatisfaction with the terms of a settlement is inadequate to overcome the presumption that an attorney is authorized to settle a case. *Id.* The party objecting to settlement in that case was present at a settlement conference, knew the purpose of the conference, and spoke with his attorney during the negotiations. *Id.* at 304-05. Although the plaintiff was subjectively displeased with the discussion, he did not objectively express his disagreement with the terms until two weeks after his attorney accepted the settlement.

In contrast, in this case, Johnson did not stand aside and allow Swimmer to settle her case without expressing her objections, she was not present when Swimmer accepted the settlement, and Swimmer did not attempt to contact her before faxing his acceptance to the VA. Even assuming that Swimmer's recollection of the November 20th conversation is correct, he does not dispute that after that conversation Johnson did everything she could to limit Swimmer's authority before he spoke to the VA and Swimmer recognized this limitation in his later conversations with Johnson. There is no evidence contradicting Johnson's testimony that she called Swimmer back several times that day, that she left him a message telling him that he could not settle without her approval, that she had

always insisted on having final approval, that she had previously rejected a settlement containing similar terms at the parties' mediation, and that Swimmer himself had always approached Johnson as if the settlement would only become final once she accepted it, both before and after he formed his agreement with the VA.

In addition, based on the circumstances of the conversation on the morning of November 20th, it is difficult to credit Swimmer's recollection that Johnson consented to this agreement with the VA. Prior to this conversation, Johnson sought money damages and had refused an offer at mediation that lacked damages. However, when asked specifically what he discussed with Johnson that morning, Swimmer stated that he explained "exactly what I put in my fax and memo dated 20th of November," and nothing more. The memo does not provide for money damages, therefore, according to Swimmer, he did not even address the possibility of money damages or explain to Johnson why damages were no longer probable or desirable, even though nothing had changed between the end of the mediation and this conversation. Despite this omission, Swimmer asserts that Johnson authorized him to offer the VA the terms outlined in his fax during this conversation. I find it unlikely that the conversation proceeded as Swimmer describes, although that might explain Johnson's later anxiety and repeated

attempts to contact Swimmer. As a result, I find that Swimmer did not have authority to accept the settlement on Johnson's behalf.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to enforce the settlement agreement [#21] is DENIED.

**IT IS FURTHER ORDERED** that plaintiff's pro se motion to reopen case [#18] is denied as moot.

**IT IS FURTHER ORDERED** that the parties shall file a joint proposal for amending the Case Management Order no later than **May 5, 2010**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2010.