UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRINA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1872 CDP |
| | ) | |
| ERIC K. SHINSEKI, | ) | |
| U.S. Secretary of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Trina Johnson worked as a nurse at the Veterans Affairs hospital until she was fired in 2007. She then brought this suit, alleging that defendant terminated her in retaliation for her previous filing of an EEOC complaint. Because I conclude that genuine issues of fact remain regarding whether the motivation for terminating Johnson was retaliation, I will deny defendant's motion for summary judgment.

### Background

Johnson began her employment with the Department of Veterans Affairs Medical Center in St. Louis as a nursing assistant in 1994. Approximately six years later, she became a registered nurse and transferred to a different unit within the Department. Nearly all of the material events at issue in this case involve

Johnson's interactions with Kevin Ross, who became her supervisor in 2004. In 2005 Johnson filed an informal Equal Employment Opportunity complaint alleging that Ross was harassing her; she filed a formal complaint in 2006. Ross became aware of Johnson's complaint at some point in 2005. Although there are significant disputes about the details and the proper characterization of what happened after Johnson filed the first complaint, the general outline of events is not disputed.

At around the same time as Johnson's initial EEO complaint, Ross began reporting, or attempting to report, his displeasure with her performance and attendance. A number of disputes are shown by the evidence, and in each one, plaintiff claims Ross acted in retaliation and defendant claims Ross's actions were justified by plaintiff's performance. Ross issued at least two admonishments that were later retracted; he withheld a "Proficiency Review" far longer than normal; a typographical error on a performance evaluation indicated Johnson had a lower job classification and lower pay than she actually had; Johnson was notified that she had not submitted correct documentation for leave previously taken; Johnson was given a written counseling because of an incident between her and another nurse. On more than one occasion Ross refused speak to Johnson about the issues because she insisted on having a union representative present. In 2006 Ross and Johnson

had many disagreements about leave.  The exact facts are complicated and
disputed.  Some of the disagreements revolved around Johnson's tardiness and her
failure to properly document her leave; in most instances, Ross classified
Johnson's absences as absent without leave over her objections.  A major dispute
arose about a planned vacation, with Ross instructing Johnson that she could not
take time off without pay and Johnson insisting that her leave had been previously
approved.

On November 30, 2006, Johnson took extended sick leave until
approximately the second week of January of 2007.  According to Johnson, she
called the Department each day and provided the Department with a note from a
doctor indicating that she was too ill to work.  While Johnson was out, Ross sent
her a letter stating that she must provide additional information about her medical
issues, even though the union contract specifically stated that employees could not
be required to present the information demanded by the letter.  Ross classified
Johnson as absent without leave for much of the time that Johnson was on
extended sick leave.

Johnson was terminated on July 7, 2007.  Her termination letter stated that
she was terminated for her inability to maintain a regular work schedule and
because she had been absent without approved leave for approximately 600 hours

from July 2006 to April 2007, which amounted to approximately 40% of the total hours available for that period.

## Analysis

Defendant moves for summary judgment on Johnson's claim of retaliation. On a motion for summary judgment, the facts and inferences are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Section 2000e-3(a) of Title 42 prohibits retaliation against an employee who has engaged in protected activity: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has made a charge" under Title VII. 42 U.S.C. § 2000e–3(a). To defeat defendant's motion for summary judgment on a claim under this section, "a plaintiff must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011) (quotations omitted). Johnson does not argue

that her claim is supported by direct evidence of retaliation, therefore, she must

create an inference of retaliation under the *McDonnell Douglas* framework to

avoid summary judgment.

The *McDonnell Douglas* framework consists of three stages. In the first

stage, the plaintiff must establish a prima facie case of retaliation. *Fercello v.*

*County of Ramsey*, 612 F.3d 1069, 1077-78 (8th Cir. 2010). In the second stage,

the defendant bears the burden of providing a legitimate, non-retaliatory basis for

the alleged adverse employment action. *Id.* In the third stage, the plaintiff must

show that there is a genuine issue of fact regarding whether defendant's stated

reason for the adverse action is pretextual. *Id.*

Under the first stage of the *McDonnell Douglas* framework, "an employee

has the initial burden of establishing a prima facie case of retaliation by showing

that (1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse

employment action, and (3) the adverse action was causally linked to the protected

conduct." *Pye*, 641 F.3d at 1021. The only contested question here is whether a

causal connection exists between the protected activity and Johnson's

termination.[1] A causal link between an employee's conduct and her termination

---

[1]Defendant argues that plaintiff alleges several separate claims of retaliation, and then
argues that some of those things are not adverse employment actions. But Johnson's amended
complaint brings only one claim of retaliation, which I interpret to be that defendant engaged in
a retaliatory campaign against Johnson, culminating in her termination. Whether each action in

may be shown if the retaliation occurred soon after the employee's protected conduct or if the employer's concerns about the employee's conduct arose only after the employee engaged in protected conduct. *See Pye*, 641 F.3d at 1021-22.

The evidence can be viewed as showing the following: Johnson worked for the VA for ten years without any serious incidents or disciplinary action. She filed her first EEO charge against her supervisor, Kevin Ross, in March of 2005. Shortly afterwards, Ross began noting his displeasure with Johnson's performance and her attendance, refused Johnson pre-scheduled leave, recorded her leave under the most negative classification, demanded detailed medical information that he had no reason to request, withheld Johnson's Proficiency Report longer than usual, refused to recommend Johnson for a promotion for obscure reasons, and finally terminated Johnson in July of 2007. Whether the lack of incidents before Johnson's complaint and the frequent unfavorable notices, classifications, and actions after her initial complaint are sufficient to demonstrate a causal link between her EEO claims and her ultimate termination is a genuine dispute of material fact that must be determined by a trier of fact, not on summary judgment.

---

defendant's retaliatory campaign could support its own claim for retaliation is irrelevant. And termination is "clearly an adverse employment action." *See Pye*, 641 F.3d at 1021.

Because a genuine dispute exists regarding the prima facie case, I need not consider at length the next stages of the *McDonnell Douglas* inquiry. It appears that defendant will have little difficulty showing that it had a legitimate justification for its adverse treatment of Johnson. *See Pye*, 641 F.3d at 1021-22. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011). But even if defendant can meet that relatively low burden, factual disputes remain on the third stage of the *McDonnell Douglas* inquiry, that of pretext.

An "employee can prove that her employer's articulated justification for an adverse employment action is pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir.2010). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Torgerson*, 643 F.3d at 1047. *12. Johnson has shown that there is a fact dispute over whether retaliation was the real reason for her termination, and summary judgment is not appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#55] is DENIED.

**IT IS FURTHER ORDERED** that defendant's motions to file a brief in excess of page limitations [#56] and to file a supplement to its reply [#63] are GRANTED.

The parties are reminded that this case is set for jury trial on the two-week docket beginning **October 3, 2011** and that the first part of their pretrial submissions is due on **September 13, 2011**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of August, 2011.